```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION


JANINE G. BURROWS,                :

     Plaintiff,                   :

vs.                               :
                                        CIVIL ACTION 08-0012-M
MICHAEL J. ASTRUE,                :
Commissioner of
Social Security,                  :

     Defendant.                   :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636© and Fed.R.Civ.P. 73 (*see* Doc. 21).  Oral argument was heard on December 22, 2008.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was forty-four years old, had completed some college education, and had previous work experience as a lab technician and research assistant (Doc. 17 Fact Sheet). In claiming benefits, Plaintiff alleges disability due to a closed head injury, a traumatic laceration of the spleen, a cirrhosal tear of the ascending colon, a pelvic fracture, a knee fracture, multiple rib fractures, depression, a thought disorder, and chronic pain (*id.*).

The Plaintiff filed an application for disability insurance benefits on September 9, 1993, alleging an onset date of June 15, 1992 (Tr. 40-42). Benefits were denied by the Social Security Administration,[1] so Burrows sought relief in this Court which determined that Plaintiff's claims had not been properly

---

[1] By this time, Plaintiff had filed a second application for benefits, this time on December 9, 1997, which again asserted a disability onset date of June 15, 1992 (Tr. 97-89).

2

considered; the action was remanded for further consideration (Tr. 643-66).  *Burrows v. Barnhart*, Civil Action 02-0592-P-C (S.D. Ala. April 5, 2004).  On remand, following a hearing by an Administrative Law Judge (ALJ),[2] benefits were again denied because it was determined that Burrows was capable of returning to her past relevant work as a research assistant (Tr. 603-36). Plaintiff requested review of the hearing decision (Tr. 584-97) by the Appeals Council, but it was denied (Tr. 579-82).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Burrows alleges that:  (1) The ALJ erred in finding that some of her impairments were not severe; (2) the ALJ did not properly consider the opinions and conclusions of her treating physicians; (3) the ALJ improperly discounted her testimony of pain; (4) the ALJ improperly relied on the testimony and conclusions of a medical expert (hereinafter *ME*); (5) Plaintiff is incapable of performing her past relevant work; and (6) the ALJ was biased in reaching his decision (Doc. 17).  Defendant has responded to—and denies—these claims (Doc. 18).

Burrows first claims that the ALJ erred in finding that some of her impairments were not severe.  Plaintiff specifically focuses on her memory and emotional problems (Doc. 17, pp. 17-

---

[2]At the hearing, Plaintiff amended her claim to request a closed period of disability between June 15, 1992 and December 31, 2001 (Tr. 240; Doc. 17, p. 2).

18).  In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a) (2008).[3]  The Appellate Court has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  Under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

As support for her claim, Plaintiff references three different reports (Doc. 17, pp. 17-18).  In the first, dated March 28, 1993, Psychologist Daniel L. Koch administered a variety of tests and determined that she had "a mild degree of

---

[3] "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

depression thought disorder secondary to the depression which is making it difficult for her to concentrate.  She is experiencing problems with her memory, as well as central dysarthria and anomia" (Tr. 241; see generally Tr. 237-41).  In the second report, dated January 19, 1998, Psychologist C. Van Rosen indicated that Plaintiff was "generally functioning in the high average range of intelligence [though] she may have cognitive deficits in specific areas such as short-term memory and abstract reasoning" (Tr. 322; see generally Tr. 320-23).[4]  Rosen's diagnosis was Cognitive Disorder and Depressive Disorder (Tr. 323).  On August 18, 1999, Psychologist James F. Chudy examined Burrows and noted that her immediate and remote memory seemed adequate (Tr. 412-15).  Results from the Weschler Memory Scale-Third Edition showed that "auditory and visual immediate memory [fell] in the Average range.  Her overall immediate memory also [fell] in the Average range;" her general memory fell at the high end of the Low Average range (Tr. 414).  Chudy's diagnostic impression was Mood Disorder due to Chronic Pain.

    The ALJ found that Plaintiff's memory and emotional problems were not severe impairments as the evidence did not support such an assertion; additionally, they were not of twelve-month

---

[4]The Court notes that Rosen's report indicates that Burrows was treated by a Psychologist for about two years (Tr. 321), but the record does not support the assertion and Plaintiff has failed to provide evidence of it.

duration[5] (Tr. 625-27).  The Court agrees with the ALJ.  Three psychological consultations over a period of six-and-one-half years, with no treatment over any period,[6] do not a severe impairment make.  Furthermore, the Court does not find that any of the Psychologists have indicated that Plaintiff's work would be significantly affected by her memory or emotional problems.  Burrows's claim otherwise is without merit.

Plaintiff next claims that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of her treating physicians.[7]  Burrows refers to the opinions of Drs. McCullers and Freeman and Psychologists Koch and Rosen (Doc. 17, pp. 6-10).  It should be noted that "although the opinion of an

---

[5]The Court notes that "[t]he law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a) (2008).

[6]The Court notes that Dr. McCullars prescribed a variety of anti-anxiety and anti-depressants over a period of years, as will be noted later; however, his records reflect no treatment, other than the drugs, and fail to show that Burrows is unable to work because of these problems.

[7]Plaintiff actually frames the claim as follows:  "The ALJ erred in his improper use of the medical expert to discredit the opinion of the treating physician" (Doc. 17, p. 6).  The Court chooses to restate the present claim as such as Plaintiff raises another claim regarding the medical expert which will be handled later in this Report.
   Having made this determination, though, the Court notes that Plaintiff has referenced only a limited amount of medical evidence on which the Court is to make a determination with regard to this claim.  Because of this, and because of the extremely large record to be considered, the Court will not summarize all available evidence but will focus on that which is specifically pertinent to the claim.

examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[8] *see also* 20 C.F.R. § 404.1527 (2008).

At the outset of this discussion, the Court notes that it does not appear that the ALJ rejected the conclusions of either Koch or Rosen.  However, as the Court has previously noted, their opinions did not support a finding of disability, so the Court will engage in no further discussion of the Psychologists with regard to this claim.

Plaintiff was initially seen by Dr. Ben Freeman, an orthopedic surgeon, on July 15, 1992, one month after she had been involved in a motor vehicle accident; the doctor noted that Burrows had suffered a pelvis fracture, a knee injury, six fractured ribs, and that she had undergone a spleenectomy (Tr. 310, 366).  The doctor noted a good deal of muscle spasm in the lumbosacral area and stated that she "should gradually increase her activities to tolerance;" Freeman prescribed Soma.[9]  Four

---

[8] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[9] *Soma* is a muscle relaxer used "for the relief of discomfort associated with acute, painful musculoskeletal conditions," the effects of which last four-to-six hours.  *Physician's Desk Reference* 2968 (52nd ed. 1998).

7

weeks later, noting Burrows's complaints of pain, the doctor stated that her pelvis appeared to be healed; Freeman stated that he would keep her on the Darvocet[10] and Soma (Tr. 308, 310).  On that same date, the Orthopedic wrote a letter, indicating that because of the pain caused by her fractured ribs and sacroiliac disruption in the right hip, Burrrows needed to wait a month before returning to work and may "need to return on a part time basis or a light duty basis" (Tr. 309).  On September 9, the doctor found that the ribs were healed but the hip was still bothering Plaintiff; two weeks later, Freeman noted that the hip was still causing her pain, but that Burrows could return to work for half-days (Tr. 308; *see also* Tr. 307).  On November 4, the Orthopedic noted that Plaintiff was still complaining of pain, so he arranged an injection; he also noted that an MRI showed degenerative disc changes with loss of normal hydration at L5-S1 as well as a "tear in the margin of the annulus with a small amount of blood in the tear" (Tr. 306).  He also noted that EMG/NCV's by another doctor suggested "the possibility of a mild left femur neuropathy and the possibility of a mild early right SI radiculopathy" (*id.*).  Two days later, the doctor wrote a letter indicating that Plaintiff could work only four-to-six

---

[10]Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation.  *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

hours per day as discomfort in the SI joint of the right hip would prevent more than that (Tr. 317).  After several more examinations, with Burrows still complaining of worsening pain, Dr. Freeman, on April 5, 1993, "advised her to terminate her [full-time] work and stay home and see if she can let this thing get well" (Tr. 301; see also Tr. 316).  In making this recommendation, the Orthopedic noted that acupuncture, chiropracty, and injections had not helped, while epidural blocks had helped only a little.  He further noted that he had "[n]o specific treatment at this time" (Tr. 301).

　　Dr. George McCullars, a Pathologist, first examined Plaintiff on September 2, 1993 and continued to examine and treat her through May 22, 2000 (Tr. 324-65, 369, 381-86, 429-31, 445-49).  The Court notes that McCullars's records faithfully report Burrows's complaints of pain and limitation as well as the doctor's medicinal regimen of Zoloft,[11] Diazepam,[12] Decadron,[13]

---

[11]*Zoloft* is "indicated for the treatment of depression." *Physician's Desk Reference* 2229-34 (52nd ed. 1998).

[12]*Diazepam*, better known as Valium, is a class IV narcotic and is used for treatment of anxiety.  *Physician's Desk Reference* 2765-66 (62nd ed. 2008).

[13]*Decadron* is used for, among other things, the treatment of rheumatic disorders.  *Physician's Desk Reference* 1635-38 (52nd ed. 1998).

Lortab,[14] Norflex,[15] Darvocet, Ultram,[16] Effexor,[17] and Soma; however, Dr. McCullar, on only rare occasions, provided objective notations of physical findings from his examinations (*see* Tr. 324-65, 381-86, 445-47).[18]  The doctor has provided three different physical capacity evaluations (hereinafter *PCE's*) (Tr. 387, 430-31, 449) and pain evaluations (Tr. 388, 429, 448) which range over a period from September 25, 1998 through May 22, 2000. In the PCE's,[19] McCullars indicated that Burrows could sit for less than two hours and stand or walk for less than two hours at a time but could sit for five hours and stand/walk for four hours during an eight-hour day; he also thought that Plaintiff could lift up to ten pounds frequently and twenty-five pounds on an

---

[14]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[15]*Norflex* is used "for the relief of discomfort associated with acute painful musculoskeletal conditions." *Physician's Desk Reference* 1531 (52nd ed. 1998).

[16]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain." *Physician's Desk Reference* 2218 (54th ed. 2000).

[17]*Effexor* is used "for the treatment of depression. *Physician's Desk Reference* 3037 (52nd ed. 1998).

[18]In fact, the most complete examinations are his last three, coinciding with the typed records, as opposed to the handwritten ones (Tr. 445-47).

[19]Rather than setting out the details of each PCE, the Court has "averaged" them by taking the more limiting evaluation of the two latter ones and reported it herein.  The first one, from September 25, 1998, is not reported here as Dr. McCullars noted that "[t]his form was completed from a subjective data base" (Tr. 387).

occasional basis but could carry up to five pounds frequently and twenty pounds occasionally.  McCullars indicated that Burrows could bend, squat, stoop, reach, reach overhead, crawl, climb, and balance on an occasional basis.  In the pain evaluations, the doctor indicated that Plaintiff suffered pain "to such an extent as to be distracting to adequate performance of daily activities or work" and that activities such as sitting, walking, standing, bending, and lifting "greatly increased pain causing distraction or abandonment from tasks related to daily activities or work" (Tr. 429, 448).

On September 1, 1999, Dr. Elias G. Chalhub, who specializes in child neurology and is certified in pediatrics, psychiatry, and neurology, found Burrows to have normal blood pressure, to be alert, and oriented with intact memory (Tr. 416-18, 422).  The doctor noted normal attention span and concentration as well as "an adequate fund of knowledge concerning current and past events and adequate insight for [her] age" (Tr. 416).  Chalhub found Burrows's strength to be 5 of 5 and "full and equal in the bilateral upper and lower extremities" with normal tone; sensory was intact in all extremities to light touch and reflexes were symmetric in all extremities (Tr. 417).  Gait was normal.  The doctor found that Plaintiff had "no limitation in terms of sitting, standing, walking or talking;" he went on to say that she had no neurological deficit (*id.*).  Chalhub also found that

Plaintiff was capable of lifting and carrying up to twenty pounds continuously, twenty-five pounds frequently, and one hundred pounds occasionally; he listed no limitations (Tr. 418).

On September 16, 1999, Dr. Archie Crotwell, III, an orthopedic surgeon, examined Burrows who told him that she had not seen an orthopedic doctor or neurologist in three or four years (Tr. 419-21, 423).  The doctor noted that Plaintiff's sensory and motor in the upper extremities was essentially normal.  Toe and heel walk were good.  In the lower extremities, sensory was normal and motor was 5/5.  X-rays of the lumbar spine showed moderate degenerative disk disease.  His impression was moderate lumbar degenerative disk disease, an old fracture of the pelvis, and some equilibrium problems.  Dr. Crotwell indicated that orthopedic-wise, Burrows "could carry out light and sedentary [work] without any difficulty" (Tr. 420).  The doctor completed a PCE in which he indicated that Plaintiff could sit, stand, or walk for one hour at a time, but was able to sit for eight, stand for six, and walk for four hours during an eight-hour day; he further found that she could lift ten pounds continuously, twenty-five pounds frequently, and fifty pounds occasionally and able to carry five pounds continuously, twenty pounds frequently, and twenty-five pounds occasionally (Tr. 421).  Crotwell said that Burrows could bend, squat, crawl, and climb occasionally, but could reach on a frequent basis.

The ALJ "assigned determinative evidentiary weight to the findings and conclusions expressed by Drs. Chalhub and Crotwell" (Tr. 629). The ALJ found that "Dr. Freeman's opinion that the claimant was unable to work as of April 1993 is [] inconsistent with the weight of the objective evidence appearing in the record and is [] likely based only on the claimant's subjective complaints" (Tr. 631). The ALJ also discredited the opinions of Dr. McCullars, finding that his PCE's and pain statements were unsupported by his treatment notes; the ALJ also noted McCullar's reluctance to perform a consultative examination or testify to clarify his opinions (Tr. 632-33).

The Court finds substantial support for the ALJ's conclusion that Drs. McCullars' and Freeman's opinions seem to be largely based on Burrow's subjective complaints as their treatment records do not support their conclusions. The Court has already noted that McCullars' notes provide little objective evidence to support the limitations he set out in his PCE's. Likewise, although Freeman tried many different things to help Burrows alleviate her pain, he ultimately concluded that there was no treatment for her and that she should quit working until she decided that she could return; in other words, Freeman's opinion was based on Plaintiff's own statements regarding her pain. Though Drs. Chalhub and Crotwell only saw Burrows once each, their conclusions are more consistent with their own—and each

13

other's—findings and the record as a whole.

Burrows next claims that the ALJ improperly discounted her testimony of pain (Doc. 17, pp. 10-13). The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms
> will not alone establish that you are
> disabled; there must be medical signs and
> laboratory findings which show that you have
> a medical impairment(s) which could

> reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R.. 404.1529(a) (2008).

The ALJ discounted Plaintiff's complaints of pain on four grounds: (1) the objective medical evidence did not support the level of pain and function that she asserted; (2) the reports of two examining neurologists, Drs. Middleton (*see* Tr. 559) and Yager (*see* Tr. 214-17), failed to support the severe pain of which Burrows complained; and (3) the ME testified that he had found no evidence to support the severe limitations asserted (Tr. 630-31). Finally, the ALJ found that the reports of Drs. Crotwell and Chalub failed to support her claims of pain and limitation. (Tr. 631).

The Court finds substantial support for the ALJ's conclusion. While there is no doubt that Plaintiff suffered a terrible vehicle accident and was in pain for a short period of time, the medical evidence does not support the sustained period of pain and limitation asserted by Burrows.

Plaintiff next claims that the ALJ improperly relied on the testimony and conclusions of an ME. Burrows has made two different assertions in bringing this claim: (a) "[t]he ALJ

erred in failing to follow the Appeals Council directive to obtain an orthopedic medical expert and in failing to sustain the objections to the medical expert;" and (b) "[t]he ALJ erred in his improper use of the medical expert to discredit the opinion of the treating physician" (Doc. 17, pp. 2, 3-10).  The Court will examine both of these assertions but notes that according to the Social Security regulations, ALJ's may "ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart."  20 C.F.R. § 404.1527(f)(2)(iii) (2008).  The testimony of these medical experts is supposed to be evaluated the same as the other evidence of record.

Plaintiff's assertion that the ALJ failed to follow the Appeals Council's directive to obtain an orthopedic ME arises from this Court's direction, in the Report recommending remand, that "[i]t may very well be necessary for the ALJ to seek the testimony of a [sic] orthopedic medical expert regarding plaintiff's RFC based upon the medical evidence in existence prior to December 31, 1998" (Tr. 659).  However, the Court knows of no authority on which this action can be remanded for an ALJ's failure to follow the orders of the Appeals Council.  *See Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 (11th Cir. 2002) ("[C]ourts do not have jurisdiction over the Commissioner's

decision not to reopen a claim since such a refusal is not a final decision within the meaning of 42 U.S.C. S 405(g)") (*citing Sherrod v. Chater*, 74 F.3d 243, 245 (11th Cir. 1996); *Stone v. Heckler*, 778 F.2d 645, 646-47 (11th Cir. 1985)).  The Court further notes that Burrows has not directed this Court to any authority which would allow it to remand this action based on the ALJ's failure to do as the Appeals Council directed.  The Court further notes that this Court's directive was a suggestion and not a specific order for the calling of an orthopedic ME.  While the testimony of an Orthopedic may have been more relevant to the specific injuries sustained by Burrows, the Court cannot say that the ALJ's calling of a Neurologist provided harm justifying remand.  Furthermore, the Court has reviewed Plaintiff's objections to the ME's qualifications (Doc. 17, pp. 3-6) as well as the ME's testimony at the evidentiary hearing (Tr. 721-49) and finds nothing there which amounts to reversible error.

   Burrows next claims that "[t]he ALJ erred in his improper use of the medical expert to discredit the opinion of the treating physician" (Doc. 17, pp. 2, 6-10).  The Court has read the testimony of the ME (Tr. 721-49) and agrees with Plaintiff that he second-guessed the decisions of her treating physicians.  Nevertheless, the ME found those doctors' conclusions unsupported by objective evidence, a determination also reached by the ALJ and found, by this Court, to be supported by substantial

evidence.  While the Court finds that some of the ME's remarks reached beyond his role as an expert, the ALJ ultimately concluded that the objective evidence did not support a finding of disability for any period of time.  The Court finds no reversible error with regard to Burrow's claims regarding the medical expert.

Plaintiff next claims that she is incapable of performing her past relevant work as a research assistant (Doc. 17, pp. 20-22).  Burrows's claims focuses on the psychological components of her past work and asserts that the ALJ should have ordered a psychological examination to determine to what extent she could return to her past work.

The Court has already addressed Plaintiff's claim that the ALJ did not properly consider several of her impairments (memory and emotional problems) to be severe and found it to be without merit.  In discussing that claim, it was specifically noted that "the Court does not find that any of the Psychologists have indicated that Plaintiff's work would be significantly affected by her memory or emotional problems" (p. 6).  Burrows's assertion gains no new life in this claim.  The Court finds that Plaintiff's claim that she is unable to perform her past relevant work as a research assistant to be without merit.

Burrow's last claim is that the ALJ was biased in reaching his decision (Doc. 17, pp. 18-20).  It is noted that the Supreme

Court has held that Administrative Law Judges are presumed to be unbiased, though "[t]his presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification;" the burden of disqualification falls on the party making the assertion. *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982).

The Court has reviewed the entire record and decision and finds no bias in the decision. Though it would appear that the ALJ and Plaintiff's counsel are not best friends, the Court cannot say that the ALJ's decision demonstrates bias. Burrows's claim otherwise is without merit.

Plaintiff has raised six different claims in bringing this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, see *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 5th day of January, 2009.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE